At a Court of Oyer and Terminer held at this term, Wesley Anderson, negro, was indicted and tried for the murder in the first degree of James T. Emory, negro, in the month of August preceding. *Page 39 
They had met at the camp-meeting near Camden, and having had a quarrel, Anderson told Emory that if he would follow him off the camp ground he would give him satisfaction, on which they started and walked about a hundred yards from it, when Anderson turned to him and asked him if he had come out there to fight, to which he replied no, but if he had to fight he could do it, when Anderson immediately struck him with his fist and staggered him back some little, but he recovered and stepped up towards Anderson with both his hands behind him and with a pocket knife in one of them, of which a bystander just then gave notice to Anderson, who exclaimed, putting his hand at the same instant in his pocket, "damn you, if that is what you want, I am ready for you," and drawing a pocket knife from it, made a pass at him with it, but missed him; he then repeated the effort and struck him with the blade of it, inflicting a cut or gash in his left side extending an inch and a half in length. An effort to repeat the blow was arrested by some one seizing hold of his arm, and others interposing they were at once separated. Anderson had his coat off when they left the camp ground, and Emory was drawing his when the knife was first seen in his hand, and just as Anderson struck him with his fist. But the witnesses all concurred in the statement, that Emory did not strike him at all, and that when the cry was uttered that he had a knife, he threw up both his hands and arms before him, and there was no knife then in either of them, and that it was while his hands and arms were so raised before him, he received the cut from Anderson's knife. He walked a mile from there, and was then obliged to lie down under a tree on the road side; a physician was summoned to attend him and for several days found the symptoms of the wound quite favorable, but in about the usual time tetanus ensued of which he died the twentieth day thereafter.
It is conceded by the Attorney General that this is not a case of murder in the first degree, and it is admitted by the counsel for the prisoner that it is a case of manslaughter, and the" contend that it is nothing more. The Attorney General, on the other hand, insists that it is murder in the second degree.
If the death is produced by the use of a deadly weapon, great indeed must be the provocation to reduce the offense from the grade of murder to the grade of manslaughter. Arch. 324. This whole case, therefore, turns on the question *Page 41 
of provocation. If you are satisfied from the evidence before you, that the prisoner and the deceased left the camp ground and went to the place mentioned, to fight, and that after they reached the point beyond the bridge, and the prisoner had struck the deceased a blow with his fist merely, the latter recovered his position and drew a knife, or had an open knife in his hand, by his side, or behind his back, which the prisoner either saw or knew he had from the admonition of others on the spot, and the deceased was near enough at the time to the prisoner to strike him with it, and made an assault upon him with it, or any motion or movement indicating an intention to strike the prisoner with it, and that the prisoner in a transport of passion suddenly drew his knife and dealt the deceased the mortal blow with it, of which he afterward died, then, in the opinion of the Court, it was a sufficient provocation under the attendant circumstances, about which there is little or no contrariety of evidence, to reduce the offense to the crime of manslaughter, and it would be nothing more. But if, on the other hand, the jury should be satisfied that after the parties went out to fight and reached the place spoken of by all the witnesses, the deceased declined the fight, or did not strike or attempt to strike the prisoner, even after he had received a blow with the fist from him, and although he might' have drawn a knife, or had an open knife in his hand, down by his side, or behind his back, and either put it up or dropped it on the ground when the prisoner was apprized of the fact that he had a knife; and either threw up his hands, or otherwise disclosed to him that he no longer had a knife, and made no assault upon the prisoner, and no attempt or effort to use it, or at any time to strike or stick the prisoner with it, and the accused then drew a knife and afterward gave him the cut or stab which caused his death, we are of the opinion that such a state of facts would not constitute a sufficient provocation, under all the circumstances proved, to reduce the offense to the grade of manslaughter; for *Page 42 
where the death is produced by a deadly weapon, as in this instance, the provocation must be great to mitigate the offense so far as to reduce the homicide to manslaughter. As the parties, however, went out to fight and the deceased consented to fight, when they reached the place spoken of, although the jury may be satisfied that he was not eager for it, or as much so as the prisoner, and did not, even after he had received the first blow from the prisoner, strike, or offer to strike him, either with his fist or a knife, or otherwise attempted to injure him, still if he came up to his position again after he had received the first blow which staggered him, or assumed or maintained his attitude as a combatant, we think this state of facts would constitute some provocation for the act of the prisoner, which would be sufficient to negative the legal idea of express malice, and to reduce the offense to the crime of murder in the second degree. In other words, it is the opinion of the Court, that if you find the state of facts to be as we have in the first place supposed them, it would amount to a violent and sufficient provocation, to reduce the killing to manslaughter; but if the facts be as we have in the second place assumed them, then there was some provocation under the circumstances proved, and the angry passions engendered on the occasion, of a nature sufficient to extenuate the homicide to murder in the second degree, but not sufficiently great or violent to further alleviate the killing and reduce it to the offense of manslaughter.
 Verdict — "Guilty of murder in the second degree." *Page 43